UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                              Criminal No. 11-cv-173-JL
                                           Opinion No. 2012 DNH 197
Jonathan Tanguay

## MEMORANDUM ORDER

Defendant Jonathan Tanguay has filed motions in limine, see
L. Cr. R. 12.1(c), seeking rulings on the admissibility of
evidence at his upcoming trial on one count of possessing child
pornography, see 18 U.S.C. § 2252A(a)(5)(B).  After receiving a
report from a visitor to Tanguay's home, Joshua Wiggin, that
Tanguay had displayed images of child pornography on his
computer, the New Hampshire State Police secured a warrant to
search the home for those materials.  This search allegedly
turned up child pornography on the computer.  See United States
v. Tanguay, ___ F. Supp. 2d ___, 2012 DNH 187 (denying Tanguay's
motion to suppress the evidence allegedly seized in the search).

Tanguay has filed three separate motions in limine dealing
with various items of anticipated evidence at trial.  First,
Tanguay seeks to preclude, as untimely disclosed expert
testimony, anticipated testimony by a prosecution witness about
"digital photography and video and the process by which a virtual
image or video might be made."  Second, Tanguay also seeks to

preclude, as irrelevant or overly prejudicial, evidence of (a) his sexual orientation, (b) other sexually suggestive materials allegedly found in his possession, and (c) the fact that the police seized the alleged child pornography pursuant to a search warrant. Third, Tanguay seeks to preclude testimony by the prosecution's designated forensic expert about findings made by a different forensic examiner, arguing that such testimony is inadmissible hearsay and would violate the Confrontation Clause. Fourth, Tanguay seeks to prevent the prosecution from referring to the fact that his counsel has had access to the forensic evidence in the case, arguing that this would improperly suggest that Tanguay should have come forward with his own expert analysis of that evidence. Fifth, and finally, Tanguay seeks to admit a statement that an Assistant United States Attorney formerly assigned to this case made about a potential witness.

After the prosecution filed its objections to Tanguay's motions, the court heard oral argument on them following the final pretrial conference in this matter. The court now makes the following rulings on the motions in limine. These rulings, of course, are subject to reconsideration in light of developments at trial.

## 1.   <u>Testimony about creating virtual images</u>

## a.   **The rule**

"The prosecution must prove beyond a reasonable doubt that the image is of an actual child in order to establish guilt" on a federal child pornography charge.  United States v. Rodriguez-Pacheco, 475 F.3d 434, 439 (1st Cir. 2007).[1]  In January 2012, the prosecution provided defense counsel with a report by one John Madama, expressing his opinions that certain pornographic materials allegedly found in Tanguay's possession depicted real children, and setting forth the methodology he used to reach those opinions.  But, as the prosecution acknowledges, it did not provide defense counsel with a copy of Madama's curriculum vitae, or anything else describing his qualifications, until November 20, 2012, which is less than 30 days before the upcoming trial (in which the jury was selected on December 5, 2012, and evidence is scheduled to commence on December 12, 2012).

Under Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the

---

[1]This is so because the Supreme Court has held that the former version of the statute under which Tanguay is charged was unconstitutionally overbroad insofar as it prohibited "virtual child pornography," i.e., pornography created without using actual children in the production process.  Ashcroft v. Free Speech Coal., 535 U.S. 234, 250-57 (2002) (invalidating former version of 18 U.S.C. § 2256(8)(B)).

prosecution intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." This summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. This court's Local Rules require this disclosure to occur either within 14 days of the arraignment or, if the expert witness is not at that point known to the prosecution, no later than 30 days prior to trial.  L. Cr. R. 16.1(b)(3).

Tanguay argues that the prosecution missed this deadline by not giving his counsel a copy of Madama's curriculum vitae until 15 days before jury selection and that, as a result, the prosecution should be prohibited from introducing Madama's testimony at trial.  The prosecution maintains that, because Madama's proffered testimony does not amount to expert testimony under Rule 702 of the Federal Rules of Evidence, it had no duty to make any Rule 16(a)(1)(G) disclosures as to Madama's testimony.  The court disagrees.

Under Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise," provided, among other things, that the expert's "specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact at issue." The
prosecution explains that Madama

> has experience in the area of digital photography. He
> will provide background information on digital
> photography and video and the process by which a
> virtual image or video might be made, including
> describing the complexity and cost of such an endeavor.
> He will also describe certain features in the images
> and video (including skin appearance, hair appearance,
> light and shadow placement and the depiction of
> expressive features) that the jury should consider in
> reaching its conclusion on whether a particular image
> or video depicts a real child.

This description of Madama's anticipated testimony makes it
abundantly clear that his testimony will impart his "specialized
knowledge" of digital photography and video and is therefore
testimony by an expert witness under Rule 702.

The prosecution nevertheless argues that Madama will offer
not expert testimony under Rule 702, but "lay testimony" under
Rule 701, arguing that the comment to Rule 701 "makes clear that
lay testimony is permissible when the opinion is based on a
layperson's personal knowledge gained through experience." But,
in limiting permissible lay opinions to those "not based on
scientific, technical, or other specialized knowledge within the
scope of Rule 702," Fed. R. Evid. Rule 701(c), Rule 701 in fact
"makes clear that any part of witness's testimony that is based
upon scientific, technical, or other specialized knowledge within
the scope of Rule 702 is governed by the standards of Rule 702

and the corresponding disclosure requirements of the Civil and Criminal Rules," id. advisory committee's note (2000).

The dividing line between lay opinion testimony under Rule 701 and expert opinion testimony under Rule 702, then, is marked by whether the opinion is based on the witness's specialized knowledge--rather than, as the prosecution suggests, whether the witness came by the knowledge "through experience" as opposed to training, education, or the other ways that a witness can qualify to give expert testimony.  Indeed, the advisory committee's note explains that "the distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by experts in the field."  Id. (quotation marks omitted).  The process of creating virtual images, and discerning whether that process has been employed in creating a particular image, is not "familiar in everyday life" like the subjects of permissible lay testimony recognized in the advisory commitee's note.  See id.

This includes whether a particular substance appears to be a narcotic based on the witness's familiarity with that narcotic, see id., to which the prosecution attempts to analogize Madama's proffered testimony.  The "process of reasoning" employed in concluding that a substance is cocaine because it looks and

tastes like the cocaine the witness has used in the past, see
United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989), is
familiar to laypeople and, indeed, self-evident.  It is like the
reasoning employed in concluding, for example, that a firearm has
traveled in interstate commerce because it was found in Puerto
Rico but manufactured in Massachusetts.  United States v. Colón
Osorio, 360 F.3d 48, 52-53 (1st Cir. 2004) (ruling that this was
permissible lay opinion testimony under the "familiar process of
reasoning" test).  In contrast, the "process of reasoning"
employed in explaining why an image depicts an actual child
rather than a virtual one is unfamiliar to laypeople and requires
precisely the kind of explanation the prosecution wants Madama to
offer the jury--presumably because, again, that process is
unfamiliar to laypeople.  Madama's proffered testimony is expert
testimony under Rule 702.

**b.    The remedy**

        The prosecution argues that the court should nevertheless
allow Madama's testimony because the prosecution timely disclosed
all of the information as to that testimony required by Fed. R.
Crim. P. 16(a)(1)(G) aside from his curriculum vitae, and even
that was disclosed just 15 days late.  If a party fails to comply
with Rule 16, the court may (A) order it to permit the withheld
discovery or inspection, (B) grant a continuance, (C) prohibit it

from introducing the undisclosed evidence, or (D) enter any order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). This court thus "has broad discretion in handling non-compliance" with criminal discovery obligations, with the remedy to "vary in proportion to the seriousness of the violation and the amount of prejudice claimed by the defendant." United States v . Osorio, 929 F.2d 753, 762 (1st Cir. 1991).[2]

Here, the violation was not at all serious: defense counsel timely received all of the discovery required by Rule 16(a)(1)(G)--including Madama's opinions and the bases and reasons for them--except for his curriculum vitae, which was supplied just 15 days late. Courts have generally deemed preclusion of expert testimony too harsh a sanction for such

---

[2]In arguing that the court should not preclude Madama's testimony even if it was not properly disclosed under Rule 16, the prosecution relies exclusively on Esposito v. Home Depot U.S.A., 590 F.3d 72 (1st Cir. 2009), a case considering whether precluding late-disclosed expert testimony was an appropriate sanction under Rule 37(c)(1) of the Federal Rules of Civil Procedure. But the body of law that has developed under Rule 37(c)(1) of the civil rules differs markedly from the body of law that has developed under Rule 16(d)(2) of the criminal rules: because Rule 37(c)(1) specifically provides that a party "is not allowed to use" information that has not been properly disclosed "unless the failure was substantially justified or is harmless," in civil cases, "the baseline rule is that the required sanction . . . is mandatory preclusion" of late-disclosed information. Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). Rather than relying on Esposito, then, this court relies on circuit cases specifically applying Rule 16 of the criminal rules in deciding whether preclusion is the appropriate remedy here.

minor violations of the prosecution's expert disclosure
obligations.  See, e.g., United States v. Camacho, 555 F.3d 695,
704 (8th Cir. 2009) (prosecution provided "a proposed stipulation
as to the expert's testimony and copies of lab results" but
failed to timely notify defense counsel it intended to present
that testimony at trial); United States v. Charley, 189 F.3d
1251, 1262 (10th Cir. 1999) (prosecution failed to provide
summaries of experts' testimony, but provided "all medical and
counseling records from which [they] would be testifying").

Furthermore, the court of appeals has instructed that, when
"exercising its discretion to control discovery rule violations"
in criminal cases, "the district court must inquire into the
surrounding circumstances to determine whether the violating
party has acted in bad faith." United States v. Tajeddini, 996
F.2d 1278, 1287 (1st Cir. 1993).  It is exceedingly difficult, if
not impossible, to draw an inference of bad faith here, where the
prosecution provided defense counsel with a report from Madama
nearly a year ago.  Tanguay emphasizes the fact that the
prosecution did not tell defense counsel that it might seek to
present Madama's conclusions as expert opinion testimony under
Rule 702, and instead took the position that they were lay
opinion testimony under Rule 701, but that is not persuasive
evidence of bad faith either.  While, as just discussed, the

court disagrees with the prosecution's view, it is not patently incorrect by any means. Moreover, the court can discern no unfair tactical advantage the prosecution could have hoped to gain by taking this position, since it provided defense counsel with a report of Madama's analysis nearly a year ago.

Indeed, Tanguay does not articulate any prejudice he suffered from the violation of Rule 16(a)(1)(G), aside from a single statement in his reply brief that he "cannot overcome the adverse effects of the late disclosure" because "if Madama is going to testify as an expert the defendant would seek a Daubert hearing and would need to hire his own 'digital imaging specialist' to review Madama's methods." But Tanguay does not explain why defense counsel could not have taken these steps based on the disclosure of the substance of Madama's anticipated testimony they received in January 2012, which put them on notice that, at a minimum, a digital imaging specialist working for the prosecution concluded that the pornographic material allegedly found on Tanguay's computer included real images of children.

More importantly, Tanguay has known that the prosecution intended to call Madama as a witness since at least November 20, 2012 (when the prosecution wrote to defense counsel announcing as much), yet has not asked the court to hold a Daubert hearing on Madama's testimony nor to continue the trial so that the defense

may explore retaining its own digital imaging expert.[3]  The court
of appeals has held that, in general, a defendant who does not
request a continuance in response to the prosecution's belated
compliance with its discovery obligations cannot claim prejudice
from the late disclosure, since the lack of such a request
justifies the assumption "that counsel did not need more time to
incorporate the information into the defense's game plan."
United States v. Beras, 183 F.3d 22, 27 (1st Cir. 1999)
(quotation marks omitted).

The court of appeals has also warned against remedying Rule
16 violations by precluding evidence where that sanction "is
grossly disproportionate both to the prosecutor's nonfeasance and
any prejudice to the defense."  United States v. Candelaria-
Silva, 162 F.3d 698, 703 (1st Cir. 1998) (quotation marks
omitted).  Thus, without any persuasive indication of
prosecutorial bad faith or prejudice to Tanguay, this court
cannot sanction the prosecution for its belated disclosure of
Madama's curriculum vitae by suppressing his testimony.  If
Tanguay wants any other relief under Rule 16(a)(1)(G), he shall

---

[3]Furthermore, without prejudging the merits of any Daubert
challenge to Madama's anticipated testimony, the court notes that
as reflected in materials submitted by Tanguay himself, Madama
has testified as an expert witness (and presumably been found
qualified to do so) in two dozen criminal cases.

promptly notify the court by filing an appropriate motion.  His
motion to preclude Madama's testimony, however, is denied.

**2.    <u>Irrelevant or overly prejudicial evidence</u>**

**a.    Tanguay's sexual orientation**

Tanguay argues that any evidence of his homosexuality is
irrelevant, <u>see</u> Fed. R. Evid. 401, 402, or, in the alternative,
that any probative value it has is outweighed by its prejudicial
effect, <u>see</u> Fed. R. Evid. 403.  In response, the prosecution
maintains that Tanguay's sexual orientation tends to make it more
likely that he knowingly possessed the child pornography
allegedly seized from his computer, which "all depict male on
male sexual conduct."  The prosecution also argues that, since it
intends to call two of Tanguay's former live-in romantic
partners--both male--as witnesses, his "homosexuality will be
disclosed, at least by inference."  This seeming inevitably makes
it unnecessary for the court to consider, at least at the moment,
the prosecution's argument that Tanguay's homosexuality makes it
more likely that he knowingly possessed child pornography
depicting homosexual conduct and, if so, Tanguay's argument that
his homosexuality is "extremely prejudicial" so that it should be
excluded in any event.

Of course, Tanguay's former live-in partners can be
instructed not to mention the sexual or romantic aspects of their

relationships with him during their direct testimony.  At oral
argument on the motions in limine, however, defense counsel did
not dispute the prosecution's suggestion that Tanguay would very
likely use his cross-examination of those witnesses to show that
they were now biased against him because their romantic
relationships with him have ended.  Nevertheless, in an abundance
of caution, and without definitively resolving Tanguay's Rule 403
objection, the court will rule at the moment that the prosecution
shall not mention Tanguay's homosexuality, and shall instruct its
witnesses not to do so either.  If defense counsel questions
Tanguay's former live-in partners about their romantic or sexual
relationships with Tanguay, he will have opened the door to
evidence of his homosexuality; in the unlikely event defense
counsel chooses not to pursue this line of cross-examination, and
the prosecution still wishes to present such evidence, it shall
notify the court and defense counsel outside the presence of the
jury, and the court will then rule on the admissibility of
Tanguay's sexuality, as well as whether to issue an appropriate
limiting instruction, see Fed. R. Evid. 106.  For the moment,
then, Tanguay's motion to exclude that evidence is granted
subject to developments at trial.

**b.    Other sexually suggestive materials**

Tanguay seeks to preclude, as irrelevant and unfairly
prejudicial, evidence of any sexually suggestive or pornographic
materials found on his computer, aside from the alleged child
pornography.  According to the prosecution, these materials
include "numerous images of and videos of sex between young
looking males," as well as "bookmarks for sexually explicit
websites" with domain names suggesting that they contain similar
material (e.g., "Teen Boy Paradise," "Cute Gay Boys Place").  The
prosecution argues that, while these materials do not constitute
child pornography, their presence on Tanguay's computer tends to
show that he knowingly possessed the child pornography allegedly
found there, negating any possibility, for example, that it was
placed there by someone else without Tanguay's knowledge.

Courts have recognized that a defendant's possession of
pornography featuring subjects who appear young--even if they are
in fact adults--is relevant to show that he knowingly possessed
other pornography featuring subjects who are in fact children.
See United States v. Goff, 155 Fed. Appx. 773, 776 (5th Cir.
2005); United States v. Layne, 43 F.3d 127, 134 (5th Cir. 1995).
Tanguay himself cites a similar case, United States v. Harvey,
991 F.2d 981, 995 (2d Cir. 1993), ruling that a district court
properly admitted what it called "simulated child pornography,"

i.e., pornography with subjects "over the age of 18 dressed to look younger than they really are," as rebutting a defendant's entrapment defense to a charge of receiving child pornography.[4] Relatedly, courts have recognized, as the prosecution argues, that evidence that a defendant viewed or downloaded adult pornography on his computer is admissible to negate the suggestion that the defendant "was ignorant about the child pornography" found there. United States v. Hatfield, 358 Fed. Appx. 692, 695 (7th Cir. 2009); see also United States v. Durbin, ACM 36969, 2008 WL 5192441, at *4-*5 (A.F. Ct. Crim. App. Dec. 10, 2008); Arizona v. Coghill, 169 P.3d 942, 946-47 (Ariz. Ct. App. 2007).  So evidence that Tanguay's computer contained pornography with young-looking, if in fact adult, subjects, and bookmarks for websites with names suggesting that they offered such material, is relevant.  See United States v. Sanchez, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (relying on defendant's

---

[4]Harvey also ruled that district court had erred in admitting evidence that the defendant possessed materials aside from "those that involved child pornography and simulated child pornography," including videotapes of "people performing gross acts involving human waste, and people engaging in bestiality and sadomasochism." 991 F.2d at 995-96.  The circuit court ruled that these materials were irrelevant to whether the defendant had knowingly possessed child pornography, or was entrapped to do so. Id.  This aspect of Harvey is inapposite here, where the material the prosecution seeks to introduce (so far as the court understands it at present) is not of this particularly inflammatory nature.

subscriptions "to numerous e-groups described as nude teen sites" in rejecting his claim of insufficient evidence that he knowingly possessed child pornography found on his computer), rev'd in part on other grounds, 60 M.J. 329 (C.F.A.A. 2004).

This is not to say, however, that the prosecution can introduce all, or particular items, of the adult pornography itself. Courts have recognized that, under Rule 403, the prejudicial effect of the adult pornography found on a defendant's computer can outweigh its probative value as to his knowledge of the child pornography there. See, e.g., United States v. Caldwell, 586 F.3d 338, 346 (5th Cir. 2009). That Rule 403 analysis, however, depends on the specific nature of each of the pornographic images allegedly found on Tanguay's computer, as well as, potentially, where on the computer it was stored and when and how it was put there. See id. The court does not have any of that information at present.

Accordingly, the prosecution shall not seek to introduce any of the adult pornography allegedly found on Tanguay's computer without first, outside the presence of the jury, making a detailed proffer as to the nature of the material and how and where it ended up there. The prosecution may, however, introduce evidence that Tanguay's web browser contained the bookmarks listed in its objection to his motion in limine. Again, the

presence of those bookmarks is probative as to Tanguay's knowledge of the contents of his computer, and there is little danger of unfair prejudice from the names of the bookmarked websites (as opposed to the contents of those websites, which the prosecution shall not try to introduce without first making the proffer just described).

**c.    Issuance of the search warrant**

Tanguay also seeks to preclude, again as irrelevant or unfairly prejudicial, "any facts relating to the issuance or the existence of the warrant" to search his home for child pornography--the very search that allegedly turned up the child pornography that Tanguay is charged with possessing.  The prosecution responds that, while it will not seek to introduce any of the facts leading to the issuance of the warrant, it should be allowed "to elicit that the police were at the defendant's residence pursuant to a warrant."

As the prosecution points out, "'officers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct'" during their trial testimony, so long as they do not "'relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay.'"  United States v. Maher, 454 F.3d 13, 20

(1st Cir. 2006) (quoting 2 Kenneth S. Broun, et al., McCormick on Evidence § 249, at 103 (5th ed. 1999)).  The prosecution's intended approach here--to introduce the fact that the police entered Tanguay's home pursuant to a search warrant, without introducing any of the facts that led to the issuance of the warrant--is perfectly consistent with this hornbook law.  While Tanguay says that admitting the mere fact of the warrant's issuance creates the risk "that the jury could decide the elements of the offense based on something other than the evidence introduced at trial," such as "the knowledge and prestige" of the issuing judge or "speculation" as to the reasons the warrant issued, Tanguay provides no authority recognizing that risk as a basis for excluding the fact that a search warrant issued from a subsequent trial.[5]  To the extent Tanguay is worried about any such risk, it can be mitigated through an appropriate limiting instruction.  See Fed. R. Evid. 105.  The prosecution shall be permitted to introduce the fact that police

_____

[5]Instead, Tanguay cites cases ruling that it was error to admit hearsay statements related by an officer in explaining why he took certain steps during an investigation.  United States v. Lamberty, 778 F.2d 59, 61 (1st Cir. 1985) (agent's testimony that he had received information that defendant was stealing from the mails); United States v. Brown, 767 F.2d 1078, 1084 (4th Cir. 1985) (agent's testimony as to numerous hearsay statements he received during his investigation that inculpated defendant).  The prosecution does not seek to elicit such testimony here, so these cases are inapposite.

entered Tanguay's home and seized materials from it pursuant to a search warrant.

### 3. Testifying expert's reference to non-testifying expert's findings

Tanguay seeks to exclude any testimony by the prosecution's designated forensic computer examiner, Mark Dumas, about findings made by the forensic computer examiner initially assigned to the case, Mitchell Gove. Tanguay argues that such testimony would amount to inadmissible hearsay, see Fed. R. Evid. 802, and would also violate the Confrontation Clause, because the prosecution does not intend to call Gove as a witness at trial. In response, the prosecution points out that it has offered not to introduce any evidence about Gove's findings so long as Tanguay stipulates "that the Gove examination did not contaminate any of the evidence that was reviewed by [] Dumas." At oral argument, the prosecution elaborated that, if Tanguay does not agree to such a stipulation, then it plans to introduce evidence--in the form of testimony by either Dumas or Gove--that the allegedly pornographic images Gove reviewed had the same "hash values" as the allegedly pornographic images Dumas reviewed (meaning, the prosecution explained, that they had not been altered between the time Gove analyzed them and the time Dumas analyzed them).

In light of this explanation, it is not at all clear how Dumas might testify to any "finding" by Gove, let alone how that testimony would violate the hearsay rule or the Confrontation Clause. Tanguay seems to be arguing that, in identifying the images' "hash values," Gove was making a "statement" that the prosecution will impermissibly seek to introduce at trial for its truth, through the testimony of Dumas. The court cannot rule on this argument without a better understanding of it and the underlying facts--including, importantly, what Gove's purpose was in identifying the "hash values" of the allegedly pornographic images, and how that is done. Moreover, the argument will be moot if the prosecution calls Gove as a witness at trial (as it suggested it was prepared to do). Accordingly, at the appropriate time during the trial, the prosecution will notify the court and defense counsel, outside the presence of the jury, whether it intends to have Dumas testify as to Gove's identification of the "hash values" on the images allegedly seized from Tanguay's computer, and the court can take up any hearsay or Confrontation Clause objection at that point.

**4.    Defense counsel's access to forensic evidence**

Tanguay, who does not intend to call his own forensic computer examiner at trial, seeks to exclude any evidence that his counsel had access to the forensic evidence collected during

the investigation of this case.  He argues that this could give rise to the inference that, because he did not present any expert testimony at trial analyzing the forensic evidence, "the prosecution's experts must have performed flawlessly"--and that this amounts to an impermissible inference of guilt from a criminal defendant's decision not to present evidence.  In response, the prosecution agrees not to introduce evidence of, or comment on, defense counsel's access to the forensic evidence unless the defense at trial "calls into question the accuracy of the forensic examination" by the prosecution's expert.  In that case, the prosecution argues, it can put on evidence and comment on the fact that the defendant could have called his own forensic expert, but did not, under the "invited response" doctrine.

While a prosecutor's comments on the defendant's failure to present evidence can amount to impermissible burden-shifting if "[u]nprovoked," courts generally recognize that a prosecutor is free to offer a "fair response" to defense arguments, and that, depending on the nature of those arguments, such a response can include commenting on a defendant's decision not to call certain witnesses.  United States v. Adams, 305 F.3d 30, 37-38 & n.2 (1st Cir. 2002) (citing cases).  In Adams, for example, the court ruled that it was permissible for the prosecutor to state in his rebuttal argument "that defense counsel knew of the informant

before trial and could have called him if they wanted him" after, in his summation, defense counsel had "pointed to the prosecution's failure to call the informant, saying: 'He's not a witness here, and we don't know why.'" Id. at 37-38 (further quotation marks and bracketing omitted).

It does not follow, however, that defense counsel invites the prosecutor to comment on a defendant's decision not to call witnesses on a particular subject merely by cross-examining the prosecution's witnesses on that subject. Generally, where courts have ruled that the prosecutor permissibly commented on a defendant's failure to conduct his own testing of the evidence, they deemed it a fair response to defense counsel's argument attacking the prosecution's testing. See United States v. Rogers, 423 Fed. Appx. 636, 639 (7th Cir. 2011) (defense counsel "emphasized" alleged flaws in the prosecution's testing); United States v. Wimbley, 553 F.3d 455, 461-62 (6th Cir. 2009) (defense counsel argued that the police's failure to test for DNA or fingerprints "was a fatal flaw in the prosecution's proof."). It is possible, then, that defense counsel's closing argument will invite the prosecution to comment on the fact that Tanguay had access to the forensic evidence against him but chose not to call his own expert witness analyzing that evidence. Unless and until that happens, however, the prosecution shall not introduce any

evidence, or comment upon, defense counsel's access to the forensic evidence.

**5.    <u>Statement by the former prosecutor assigned to the case</u>**

Finally, Tanguay seeks a ruling that he can introduce, as an admission by the prosecution, a statement in an assented-to motion that Tanguay filed in April 2012.  In this motion, which sought the <u>in camera</u> production and review of (among other things) Wiggin's medical records, Tanguay stated:

> Based on information recently received from the U.S. Attorney's Office, Mr. Wiggin met with AUSA Helen Fitzgibbon, [a federal criminal investigator, and a state criminal investigator] sometime in the past twelve months to discuss his potential testimony against the defendant.  Mr. Wiggin reportedly stated that, sometime subsequent to February 2012, when he gave his initial statement against the defendant, he had been hospitalized . . . for a seizure disorder, and while in treatment was placed in a medically induced coma from which he ultimately awoke with no memory of witnessing the defendant looking at child pornography, or of anything past childhood for that matter.

Tanguay argues that, because this statement was set forth in a motion to which the prosecution assented, it amounts to an adoptive admission by a party-opponent that he can use at trial. The prosecution objects on a number of grounds, including that its assent to the relief sought by the motion does not amount to its adoption of all of the statements set forth in the motion.

As an initial matter, this issue is very likely moot because, at the off-the-record portion of the final pretrial

conference, the prosecution stated unequivocally that it will not call Wiggin during its case-in-chief.  That makes any evidence of Wiggin's claimed lack of memory of the events giving rise to this case irrelevant--unless, potentially, Tanguay chooses to call Wiggin as a witness.

In any event, the court agrees with the prosecution that the statements in Tanguay's motion are not its "adoptive admissions." The Federal Rules of Evidence exclude from their definition of hearsay a statement which "is offered against an opposing party" and "is one that the party manifested that it adopted or believed to be true."  Fed. R. Evid. 801(d)(2)(B).  This court has great difficulty with the notion that, by assenting to a motion filed by its adversary in litigation, a party is manifesting that it adopts or believes to be true all of the statements in the motion--such that all of those statements could subsequently be used against the assenting party at trial.  Were that the case, deciding whether to assent to a motion seeking even the most routine relief would become an involved exercise similar to answering a complaint or responding to a set of requests for admissions, see Fed. R. Civ. P. 36, requiring the party to admit or deny every single statement in the motion.  It is safe to assume that few lawyers approach the decision to assent to a motion that way and, indeed, Tanguay has not come forward with--

nor was this court able to find--any case law treating a party's assent to the relief sought by a motion as its adoptive admission of all of the statements in that motion. So the court declines to treat the statements in Tanguay's motion as to Wiggin's meeting with the investigators as the prosecution's "adoptive admissions" such that Tanguay can introduce those statements at trial.[6]

This is not to say, of course, that the prosecutor's statements set forth in the motion are not themselves admissions, such that Tanguay could seek to offer them through the testimony of a witness who heard the prosecutor say those things. The government disagrees with even that view, however, and the court need not resolve that disagreement at present: Tanguay has disclosed no intention to try to introduce the statements in that fashion, and, as just noted, it seems highly unlikely that Wiggin will testify in any event. If he does, Tanguay can seek (through argument and proffer made outside the presence of the jury) to introduce the prosecutor's statements about Wiggin's claimed memory loss at that time. For the moment, however, Tanguay's

---

[6]Nor can the court, as Tanguay urges, take judicial notice of the motion under Rule 201 such that Tanguay can introduce the contents of the motion at trial. The court could probably take judicial notice of the fact that the government assented to the motion, but that is not the same as judicial notice of the statements in the motion (which is the evidence Tanguay seeks to introduce).

motion to admit them as the prosecution's adoptive admissions of the statements set forth in the assented-to motion for <u>in camera review</u> is denied.

For the foregoing reasons, Tanguay's motion in limine to exclude Madama's testimony[7] is DENIED, Tanguay's omnibus motion in limine to exclude evidence[8] is GRANTED in part and DENIED in part, and his motion in limine to admit evidence[9] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  December 7, 2012

cc:  Donald A. Feith, AUSA
     Seth R. Aframe, AUSA
     Behzad Mirhashem, Esq.
     Jeffrey S. Levin, Esq.

---

[7]Document no. 70.

[8]Document no. 71.

[9]Document no. 72.